UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LONNY DITELLA,

Plaintiff,

-v.-

TRANSUNION, LLC,

Defendant.

23 Civ. 11028 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Lonny DiTella, proceeding *pro se*, brings this action against

Defendant TransUnion, LLC ("TransUnion" or "Defendant"), alleging violations

of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681-1681x, and

the New York Fair Credit Reporting Act (the "NYFCRA"), N.Y. Gen. Bus. Law

§§ 380-380v.  Before the Court is TransUnion's motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons

set forth in the remainder of this Opinion, the Court grants TransUnion's

motion in full, but also grants Plaintiff leave to amend his complaint in part.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff is a Jasper Credit Card customer who alleges that he is a victim

of identity theft.  (SAC 2-3).  In 2021, Plaintiff opened a Jasper Credit Card

---

[1]    This Opinion draws its facts from Plaintiff's Second Amended Complaint ("SAC" (Dkt.
#17)), the well-pleaded allegations of which are taken as true for purposes of this
Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also relies, as
appropriate, on Plaintiff's exhibits to his First Amended Complaint ("FAC, Ex. [ ]" (Dkt.
#16-1)), Plaintiff's exhibits to his Second Amended Complaint ("SAC, Ex. [ ]" (Dkt. #18,
23-24, 29-30)), and Plaintiff's opposition brief ("Pl. Opp." (Dkt. #75)).  Courts are
permitted to consider allegations presented by *pro se* litigants for the first time in their
opposition papers, as long as such allegations are consistent with the complaint.  *See
Rogers* v. *Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *1 n.1

account, which reported monthly to Defendant TransUnion.  (*Id.* at 3).
TransUnion is a credit reporting agency ("CRA") that engages in the business of
maintaining and reporting consumer credit card information.  (*Id.* at 1).

Plaintiff alleges that, in 2022, more than $3,000 in fraudulent charges
were made to his credit card as a result of the theft of his identity.  (SAC 3).
Plaintiff reported the fraudulent transactions to Jasper Credit Card and
disputed the Jasper Credit Card account on his credit report with TransUnion.
(*Id.* at 3-4).  In response, TransUnion deleted Plaintiff's Jasper Credit Card
account from his credit report.  (*Id.* at 4).  Plaintiff asserts that TransUnion's
removal of the Jasper Credit Card account from his credit report caused his
credit score to be "inaccurately, unfairly and unreasonably decreased," due to
the loss of positive payment history.  (*Id.*).

Additionally, in response to the alleged identity theft, Plaintiff requested
that the Social Security Administration (the "SSA") change his Social Security
number, which request the SSA granted.  (SAC 3-4).  After receiving a new
Social Security number, Plaintiff contacted TransUnion to have his Social
Security number updated on his credit report.  (*Id.* at 4; Pl. Opp. 4).  Plaintiff
alleges that TransUnion failed to properly update his Social Security
information and, as a result, harmed Plaintiff's credit report.  (Pl. Opp. 6).

---

(S.D.N.Y. Feb. 26, 2016) (collecting cases); *see also Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

For ease of reference, the Court refers to TransUnion's memorandum of law in support of its motion for judgment on the pleadings as "Def. Br." (Dkt. #62-1); to Plaintiff's response in opposition to the motion as "Pl. Opp." (Dkt. #75); and to TransUnion's reply memorandum of law in further support of its motion as "Def. Reply" (Dkt. #78).

Specifically, Plaintiff alleges that TransUnion maintains two separate credit files on Plaintiff (*i.e.*, one file with his old Social Security number and one file with his new Social Security number), which continues to damage his credit reputation.  (SAC 6, 10).

On August 2, 2022, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (the "CFPB") regarding a problem with the investigations into the fraudulent information on his credit report done by CRAs, including TransUnion.  (SAC 5; FAC, Ex. G).  TransUnion responded to Plaintiff stating that it had processed Plaintiff's request and would send a copy of the "Investigation Results" to Plaintiff through the U.S. mail.  (FAC, Ex. G). The record before the Court does not include said Investigation Results.

On April 19, 2023, Plaintiff filed a second complaint with the CFPB, asserting that "TransUnion responded stating that they updated my report to reflect my new social security number but there [are] two separate credit files." (SAC 5; FAC, Ex. H).[2]  Plaintiff contends that he submitted "extensive evidence" in connection with the second CFPB complaint, including proof that two credit files exist and a copy of his Social Security card.  (SAC 5).  On June 1, 2023, TransUnion requested that Plaintiff provide further information to verify his

---

[2]     TransUnion's response to Plaintiff's first CFPB complaint included the following phrase: "Below includes the actions taken: Address – UPDATED SSN – REMOVED[.]"  (FAC, Ex. G).  Plaintiff appears to have interpreted this sentence as TransUnion's informing him that it had updated his Social Security number.  However, this excerpt of TransUnion's response is too ambiguous to allow the Court to determine that TransUnion had told Plaintiff that it updated his Social Security number, particularly given that TransUnion's full response (*i.e.*, the Investigation Results) is not included in the record.

Social Security number. (*Id.* at 5-6; FAC, Ex. R). TransUnion claims that it "has never received from Plaintiff — despite numerous requests — the required proof that the Social Security Administration has issued Plaintiff a different social security number." (Def. Br. 2).

Plaintiff contends that "Defendants' responses to the Second CFPB Complaint were inappropriate, unreasonable[, and] did not address the fact that Two Separate Credit Files with Two Separate Social Security Numbers exist for the Plaintiff." (SAC 6). Plaintiff further claims that, because of TransUnion's actions, he has been denied credit, has had new accounts closed, has seen his credit score decline, has suffered damage to his credit reputation, and has experienced difficulties with identity verification. (*Id.* at 10). He also asserts that TransUnion has improperly disseminated information from his old credit file to third parties, including Chex Systems, Lexis Nexis Risk Solutions, ID.me, Clarity Services, and Credit Karma. (*Id.* at 6, 12).

For these alleged wrongs, Plaintiff seeks statutory and punitive damages, as well as injunctive relief in the form of TransUnion's merging his credit report files, deleting inaccurate data, and re-inserting the Jasper Credit Card account into his credit history. (SAC 14-15).

## B.    Procedural Background

The Court previously summarized the procedural background in this action in its July 31, 2024 Opinion and Order regarding a motion to compel arbitration brought by a defendant that was subsequently dismissed from this action. (Dkt. #58 at 5-7; *see also* Dkt. #69). Here, the Court restates what is

relevant to the instant motion and updates the procedural history since that motion.

Plaintiff commenced the litigation that became this action *pro se* in Albany City Small Claims Court on July 31, 2023, alleging violations of the FCRA. (Dkt. #2). TransUnion removed the action to the United States District Court for the Northern District of New York on August 29, 2023, citing federal question jurisdiction. (Dkt. #1). On September 21, 2023, Plaintiff filed the First Amended Complaint (the "FAC"). (Dkt. #16). On September 25, 2023, Plaintiff filed the Second Amended Complaint (the "SAC"), the operative pleading in this action. (Dkt. #17).[3] The SAC also named Equifax Information Services, LLC ("Equifax") and Experian Information Solutions Inc. ("EIS") as defendants. (*Id.*).[4]

On November 3, 2023, the District Court for the Northern District of New York ordered Plaintiff to show cause as to "why this action should not be *sua*

---

[3]    TransUnion argues that the SAC is void because it was filed without permission from the Court. (Def. Br. 1). However, the Court will consider Plaintiff's FAC, SAC, and the exhibits attached to both because Plaintiff is proceeding *pro se*. *See Platsky* v. *C.I.A.*, 953 F.2d 26, 28 (2d Cir. 1991) (per curiam) ("*Pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements. Recognizing this, the Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard[.]").

[4]    Throughout the SAC, Plaintiff fails to distinguish among the actions of the various named defendants. TransUnion argues that Plaintiff's complaint violates Rule 8 of the Federal Rule of Civil Procedure, as the complaint was insufficient to put TransUnion on notice of the claims against it. (Def. Br. 9). While Plaintiff's complaint certainly lacks clarity, this Court is obligated to "make reasonable allowances to protect *pro se* litigants from the inadvertent forfeiture of important rights because of their lack of legal training." *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). The Court is cognizant of the burden that TransUnion has shouldered in responding to Plaintiff's scattershot allegations, but it does not perceive the complaint to be "confused, ambiguous, vague, or otherwise unintelligible" as to warrant dismissal on Rule 8 grounds. *Salahuddin* v. *Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

*sponte* transferred to the Southern District of New York (or any other district where venue lies)," as it appeared that venue in the Northern District of New York was improper.  (Dkt. #41).  Plaintiff opposed transfer to this District.  (Dkt. #42; *see also* Dkt. #45).  Equifax did not respond to the order to show cause, but instead sought leave to file a motion to dismiss.  (Dkt. #43).[5] TransUnion supported transfer of the case to this District.  (Dkt. #44).  On November 21, 2023, EIS filed a motion to compel arbitration.  (Dkt. #46).

On December 22, 2023, the action was transferred to this District.  (Dkt. #50).  Following the transfer, on January 17, 2024, EIS filed a reply memorandum of law in further support of its motion to compel arbitration.  (Dkt. #54).  Because Plaintiff's extension request had not been ruled on prior to the case's transfer, the Court *sua sponte* provided Plaintiff additional time to file an opposition to EIS's motion to compel.  (Dkt. #57).  However, Plaintiff did not file a response to the motion, so the Court considered the motion to be fully briefed and unopposed.  On July 31, 2024, after determining that the arbitration agreement with EIS was valid and that the claims before it were at least arguably within the scope of that agreement, the Court granted EIS's motion to compel arbitration and stayed the action as to it until arbitration was completed.  (Dkt. #58).  EIS was later terminated from the case upon the filing of a joint stipulation of dismissal with prejudice.  (Dkt. #69).

---

[5]     Pursuant to a stipulation of dismissal, the action was dismissed with prejudice as to Defendant Equifax.  (Dkt. #53).

6

On August 21, 2024, Defendant TransUnion filed a joint letter with Plaintiff proposing next steps.  (Dkt. #60).  TransUnion expressed its intent to file a motion for judgment on the pleadings and requested a stay; Plaintiff opposed TransUnion's anticipated motion.  (*Id.*).  On August 22, 2024, the Court ordered that a stay was not warranted.  (Dkt. #61).  However, the Court dispensed with the typical requirement of a pre-motion conference and allowed the parties to proceed directly to briefing.  (*Id.*).

On September 26, 2024, in accordance with the schedule set forth in the Court's August 22, 2024 Order, TransUnion filed its motion for judgment on the pleadings.  (Dkt. #62).  After the Court had granted Plaintiff three extensions (*see* Dkt. #67, 70-72, 74), Plaintiff filed his opposition on December 6, 2024.  (Dkt. #76).  TransUnion filed its reply on December 20, 2024, which concluded the briefing on this motion.  (Dkt. #78).[6]

## DISCUSSION

### A.  Applicable Law

#### 1.  Motions for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The standard for granting a

---

[6]    On June 6, 2025, Plaintiff filed a request for "an emergency order mandating that Defendant TransUnion LLC release [his] correct credit report … to potential property managers."  (Dkt. #83).  The Court denied this request without prejudice to its renewal after the Court issues its Opinion on TransUnion's motion for judgment on the pleadings.  (Dkt. #84).  Plaintiff has also filed letters concerning a case in New York City Family Court.  (*See* Dkt. #80, 82, 85).  The Court will not address these letters because they do not relate to the instant motion.

Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively* v. *WARFA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch* v. *City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).

Applying this standard requires courts to "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see generally Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks and alterations omitted) (quoting *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

8

[his] claim which would entitle [him] to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413-14 (2d Cir. 1999)).

That said, to survive a motion under Rule 12(b)(6) or Rule 12(c), a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Indeed, the Court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009))).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2.    Documents the Court May Consider

On a Rule 12(c) motion, courts may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts* v.

*Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted) (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

**B.    The Court Grants Defendant's Motion for Judgment on the Pleadings**

**1.    Overview**

"Congress enacted the FCRA 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'"  *Suluki* v. *Credit One Bank, NA*, 138 F.4th 709, 719 (2d Cir. 2025) (quoting *Safeco Ins. Co. of Am.* v. *Burr*, 551 U.S. 47, 52 (2007)).  "The FCRA creates a private right of action against credit reporting agencies for the negligent ... or willful ... violation of any duty imposed under the statute."  *Neclerio* v. *Trans Union, LLC*, 983 F. Supp. 2d 199, 208 (D. Conn. 2013) (quoting *Casella* v. *Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995)).

Plaintiff alleges four claims against TransUnion under the FCRA: (i) failure to appropriately investigate a consumer-submitted credit dispute, in violation of 15 U.S.C. § 1681i; (ii) failure to keep a single credit file on Plaintiff with maximum accuracy, in violation of 15 U.S.C. § 1681e(b); (iii) dissemination, reselling, and furnishing of inaccurate sensitive information to third parties, in violation of 15 U.S.C. §§ 1681e(e)(2), 1681r, 1681s-2, and 1681s-3; and (iv) failure to remove Plaintiff's personal identifying information

from prescreened offers of credit, in violation of 15 U.S.C. § 1681c-1(b)(1)(B). (SAC 7-14).  The Court addresses each FCRA claim in turn.[7]  Plaintiff also asserts a general claim for violations of the NYFCRA, N.Y. Gen. Bus. Law § 380, and adverts to certain provisions of that statute in his pleadings.  (SAC 10).[8] Where applicable, within each discussion of Plaintiff's claims under the FCRA, the Court also addresses the NYFCRA provisions that Plaintiff cites and other analogous NYFCRA provisions that may be relevant to Plaintiff's claims.

Finding that Plaintiff has failed to state a claim upon which relief can be granted, the Court grants in full TransUnion's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  However, the Court grants in part Plaintiff's request for leave to amend his pleadings, allowing him to replead his claims under §§ 1681i, 1681e(b), and 1681c-

---

[7]     Plaintiff alleges for the first time in his opposition brief that Defendant suppressed his credit report. (Pl. Opp. 6).  The Court will not address this allegation because "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers." *Davila* v. *Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (quoting *Vlad-Berindan* v. *MTA New York City Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014)); *see also Mira* v. *Argus Media*, No. 15 Civ. 9990 (RJS), 2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017) (declining to consider new allegations made in *pro se* plaintiff's opposition brief because the allegations "go well beyond merely elaborating on the facts alleged in the Complaint and apparently are intended to support new legal theories").

[8]     Plaintiff cites several NYFCRA provisions that are not relevant to his claims, including remedial provisions (N.Y. Gen. Bus. Law §§ 380-l, 380-m), a definitional provision (*id.* § 380-a), a jurisdictional provision (*id.* § 380-n), and a provision governing criminal charges (*id.* § 380-j(c)).  (*See* SAC 1-2, 8-10).  The Court will not address these provisions.  Plaintiff also cites § 380-t (*see* SAC 12), which governs security freezes and provides in relevant part that "[n]o consumer credit reporting agency shall advise in any manner a third party, of the fact that the consumer requesting the freeze is alleging to be the victim of domestic violence or identity theft."  N.Y. Gen. Bus. Law § 380-t(b). However, Plaintiff does not allege sufficient facts to state a claim that TransUnion violated § 380-t, and therefore the Court will not address this provision.

1(b)(1)(B) of the FCRA, and analogous provisions under the NYFCRA. Plaintiff's remaining claims are dismissed with prejudice.

### 2. Plaintiff Fails to State a Claim Under § 1681i of the FCRA and § 380-f of the NYFCRA

To begin, Plaintiff alleges that TransUnion failed to appropriately investigate the consumer dispute concerning his Jasper Credit Card account. (SAC 7-8). Section 1681i of the FCRA outlines the procedures that CRAs must follow to investigate disputed information. *See generally* 15 U.S.C. § 1681i. These procedures include reinvestigating a consumer's credit report "when a consumer disputes the completeness or accuracy of an item on his credit report, and directly convey[s] that dispute to the credit reporting agency." *Podell* v. *Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted); *see also Longman* v. *Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate."). Section 1681i states that if a consumer notifies a CRA of disputed information contained in his file, the CRA "'shall within a reasonable period of time reinvestigate and record the current status of that information,' and, if the 'information is found to be inaccurate or can no longer be verified, … promptly delete such information.'" *Podell*, 112 F.3d at 101 (quoting 15 U.S.C. § 1681i(a)).

Section 380-f of the NYFCRA imposes similar requirements. Specifically, the NYFCRA provides that, upon finding an item is in error or can no longer be verified, a CRA can "promptly expunge the item and otherwise correct the file."

12

N.Y. Gen. Bus. Law § 380-f(b)(1). In general, "[b]ecause the language of the NYFCRA and the FCRA is substantially similar, 'the two statutes must be construed in the same way.'" *Mader* v. *Experian Info. Sols., Inc.*, 56 F.4th 264, 267 n.1 (2d Cir. 2023) (quoting *Scott* v. *Real Est. Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999)). In particular, courts in this Circuit have considered NYFCRA § 380-f in tandem with FCRA § 1681i. *See, e.g.*, *Hines* v. *Equifax Info. Servs. LLC*, No. 19 Civ. 6701 (RPK) (JAM), 2024 WL 4132333, at *4 (E.D.N.Y. Sept. 10, 2024) (citing *Mader*, 56 F.4th at 267 n.1); *Hossain* v. *Portfolio Recovery Assocs., LLC*, 693 F. Supp. 3d 358, 362 (E.D.N.Y. 2023) ("Plaintiff's claim under N.Y. Gen. Bus. Law § 380-f(a) is the state equivalent of § 1681i[.]" (citing *Ogbon* v. *Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760 (PAE), 2013 WL 1430467, at *9 n.7 (S.D.N.Y. Apr. 8, 2013)).

To succeed on claims under § 1681i, Plaintiff must establish three elements. *First*, "a plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate." *Gestetner* v. *Equifax Info. Servs. LLC*, No. 18 Civ. 5665 (JFK), 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019) (quoting *Jones* v. *Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 272-73 (S.D.N.Y. 2013)). *Second*, Plaintiff must show that he "notified the consumer reporting agency directly of the inaccurate or incomplete information." *Cohen* v. *Equifax Info. Servs., LLC*, No. 18 Civ. 6210 (JSR), 2019 WL 5200759, at *5 (S.D.N.Y. Sept. 13, 2019) (citation omitted), *aff'd*, 827 F. App'x 14 (2d Cir. 2020) (summary order). And *third*, Plaintiff must show that the CRA "failed to respond to [his] dispute with a reasonable reinvestigation." *Id.*

Here, Plaintiff has not alleged sufficient facts showing that the information TransUnion reported about him is inaccurate. The parties do not dispute that TransUnion is a "consumer reporting agency" as defined by the FCRA. 15 U.S.C. § 1681(a)(f).[9] (*See* SAC 1; Def. Br. 1). Plaintiff alleges that, in response to his consumer dispute, TransUnion deleted the Jasper Credit Card account from his credit report. (SAC 4). He contends that the deletion constituted a failure to reasonably reinvestigate and damaged his credit reputation by removing positive payment history. (*Id.* at 7-8). However, TransUnion's removal of Plaintiff's Jasper account from his credit report expressly accords with the FCRA, which states that if a consumer's information is "inaccurate or incomplete or cannot be verified," then the CRA should "promptly delete that item of information from the file." 15 U.S.C. § 1681i(a)(5)(A); *see also Podell*, 112 F.3d at 101. Plaintiff does not allege any facts to suggest that TransUnion failed to abide by appropriate procedures in reinvestigating his disputed information; rather, the evidence that Plaintiff provides suggests that TransUnion expressly complied with the FCRA's requirements. Accordingly, the Court finds that Plaintiff fails to state a claim under § 1681i of the FCRA and, correspondingly, under § 380-f of the NYFCRA.

---

[9]     The FCRA refers to "consumer reporting agenc[ies]," but the term encompasses credit reporting agencies, and both terms apply to TransUnion. *See Scipio* v. *United Consumer Fin. Servs. Co.,* No. 17 Civ. 2012 (CSH), 2018 WL 2926298, at *2 (D. Conn. June 8, 2018) ("[D]efendant Trans Union … is a consumer reporting agency, as defined by the FCRA … (these bureaus are referred to, more often and colloquially, as 'credit reporting agencies')."); *see also TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 419 (2021) ("TransUnion is one of the 'Big Three' credit reporting agencies, along with Equifax and Experian.").

### 3.    Plaintiff Fails to State a Claim Under § 1681e(b) of the FCRA and §§ 380-j(e) and 380-k of the NYFCRA

Plaintiff also alleges that TransUnion ran afoul of the FCRA and the NYFCRA by failing to maintain a single credit file, which failure he claims amounts to a "failure to follow reasonable procedures to assure maximum possible accuracy." (SAC 9.)  In this regard, § 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Section 380-j(e) of the NYFCRA offers substantially similar language, and § 380-k provides that every "reporting agency shall maintain reasonable procedures designed to avoid violations of section[ ] ... [380-j] ... of this article."  N.Y. Gen. Bus. Law §§ 380-j(e), 380-k.

As under § 1681i, when addressing a claim under § 1681e(b), "[t]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary."  *Wimberly* v. *Experian Info. Sols., Inc.*, No. 18 Civ. 6058 (KPF), 2019 WL 6895751, at *5 (S.D.N.Y. Dec. 18, 2019) (quoting *Khan* v. *Equifax Info. Servs., LLC*, No. 18 Civ. 6367 (MKB), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019)).  "A credit report is inaccurate 'when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'"  *Spira* v. *TransUnion, LLC*, No. 23 Civ. 4319 (NSR), 2024 WL 2221662, at *3 (S.D.N.Y.

May 16, 2024) (quoting *Shimon* v. *Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021) (citations omitted)).

In his Second Amended Complaint, the only non-conclusory allegation that Plaintiff makes regarding the accuracy of the challenged credit information is that TransUnion maintains two credit files on Plaintiff, each with a different Social Security number. (SAC 9). However, crucially, Plaintiff does not allege any facts to support his conclusion that TransUnion maintained or maintains two credit files on Plaintiff. If Plaintiff were to allege sufficient facts to suggest that TransUnion does, in fact, maintain two separate credit files on Plaintiff with different credit histories, the Court leaves open the possibility that his credit report could be deemed "patently incorrect" or "misleading" under § 1681e(b). *See, e.g.*, *Shaunfield* v. *Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 796 (N.D. Tex. 2014) (finding that plaintiff's claim that a CRA maintained two credit reports, one of which "erroneously showed he had 'no' or 'limited credit history[,]' raises a reasonable inference that [the CRA] maintained and reported inaccurate credit information").

Nonetheless, to state a claim under § 1681e(b), Plaintiff must also allege sufficient facts to suggest that an inaccuracy amounts to a failure by TransUnion to follow "reasonable procedures." 15 U.S.C. § 1681e(b). Plaintiff merely asserts that Defendant failed to follow reasonable procedures, without any supporting facts (*see* SAC 9), which amounts to no more than a "threadbare recital" of the claim, *see Iqbal*, 556 U.S. at 678. Moreover, Plaintiff's allegation that TransUnion failed to follow reasonable procedures is

undercut by the exhibits to Plaintiff's FAC and SAC.  *See L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (assuming all facts to be true on a motion for judgment on the pleadings "unless contradicted by more specific allegations or documentary evidence — from the Complaint and from the exhibits attached thereto").  TransUnion sent a letter to Plaintiff on June 1, 2023, asking for further verification of his Social Security number.  (SAC 9; FAC, Ex. R).  TransUnion provided Plaintiff with numerous options of acceptable forms of verification, including a current driver's license, a Social Security card, a letter from the SSA, or a bank or credit union statement.  (FAC, Ex. R).  Plaintiff does not allege that he provided such verification to TransUnion.  As such, if TransUnion maintained two separate credit files on Plaintiff because Plaintiff did not provide proper verification to update his Social Security number, this does not suggest to the Court that TransUnion failed to follow reasonable procedures to ensure maximum possible accuracy.  Accordingly, Plaintiff's allegations and arguments are insufficient to state a claim under § 1681e(b) of the FCRA or, correspondingly, under §§ 380-j(e) and 380-k of the NYFCRA.

### 4.    Plaintiff Fails to State a Claim Under 15 U.S.C. § 1681e(e)(2)[10]

As a third claim for relief, Plaintiff alleges that TransUnion violated "15 U.S.C. § 1681e(2)" because TransUnion "disseminated, re-sold and furnished inaccurate sensitive information regarding [him] to third parties including his

---

[10]    There appears to be no NYFCRA provision analogous to FCRA § 1681e(e)(2).

name, address and social security number(s)." (SAC 11).  Although the

provision "15 U.S.C. § 1681e(2)" does not exist, the Court assumes that

Plaintiff intended to cite 15 U.S.C. § 1681e(e)(2), which is consistent with the

manner in which TransUnion interpreted Plaintiff's claim in its brief in support

of its motion for judgment on the pleadings. (Def. Br. 8-10).  "The failure in a

complaint to cite a statute, or to cite the correct one, in no way affects the

merits of a claim.  Factual allegations alone are what matters." *Townsend* v.

*Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting *Albert* v.

*Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc)).  The Court therefore

interprets Plaintiff's claim to be one under § 1681e(e)(2).

Plaintiff fails to state a claim under 15 U.S.C. § 1681e(e)(2) because he

did not plausibly allege that TransUnion procured his consumer report from

another entity for purposes of reselling.  Section 1681e(e)(2) provides that

individuals who procure a consumer report for the purposes of reselling the

report must "establish and comply with reasonable procedures designed to

ensure that the report (or information) is resold by the person only for a

purpose for which the report may be furnished under section 1681b of this

title." 15 U.S.C. § 1681e(e)(2).  TransUnion, as a CRA, generated Plaintiff's

credit report, but Plaintiff does not allege any facts suggesting that TransUnion

"procured" this report from some other person or entity.  *See Morris* v. *Equifax

Info. Servs., LLC*, 457 F.3d 460, 470 n.16 (5th Cir. 2006), *as modified on reh'g*

(Aug. 17, 2006) ("[A]t least for purposes of § 1681e, a 'procurer[ ] for resale' is

distinct from a 'consumer reporting agency.'").  In particular, Plaintiff does not

allege any facts of when, how, or from whom TransUnion purchased a credit report.  *See Rivera* v. *Trans Union, LLC*, No. 22 Civ. 1038 (MPS), 2025 WL 1549139, at *6 (D. Conn. May 30, 2025) ("Without any allegations regarding when or to whom Trans Union sold [plaintiff's] information — or how or from whom Trans Union procured his consumer report — I cannot reasonably infer that § 1681e(e) applies to Trans Union.").  Accordingly, Plaintiff fails to state a claim under 15 U.S.C. § 1681e(e)(2).

### 5.    Plaintiff Fails to State a Claim Under 15 U.S.C. § 1681r of the FCRA and § 380-p of the NYFCRA

Plaintiff alleges that TransUnion violated 15 U.S.C. § 1681r because it "disseminated, re-sold and furnished inaccurate sensitive information regarding [him] to third parties including his name, address and social security number(s)."  (SAC 11).  Section 1681r provides penalties for officers or employees of a CRA who "knowingly and willfully provid[e] information concerning an individual from the agency's files to a person not authorized to receive that information."  15 U.S.C. § 1681r.  Section 380-p of the NYFCRA contains almost identical language.  *See* N.Y. Gen. Bus. Law § 380-p.

Importantly, however, § 1681r of the FCRA (and, correspondingly, § 380-p of the NYFCRA) does not apply to TransUnion because this provision applies only to officers or employees of a CRA, not to a CRA itself.  *See Hannah* v. *Experian*, No. 21 Civ. 1943 (DSF) (SPx), 2022 WL 19003892, at *3 (C.D. Cal. May 20, 2022) ("[S]ection 1681r does not apply to Defendant [Experian] because Defendant is a consumer reporting agency and not an officer or employee of a consumer reporting agency.").  Additionally, Plaintiff does not

allege that TransUnion distributed information to "any person not authorized to receive that information." *See* 15 U.S.C. § 1681r. Therefore, even if Plaintiff were to join officers or employees of TransUnion as parties to this case, his allegations would still be insufficient to state a claim under the FCRA or NYFCRA.

### 6. Plaintiff Fails to State a Claim Under 15 U.S.C. § 1681s-2 of the FCRA[11]

Plaintiff additionally alleges that TransUnion violated 15 U.S.C. § 1681s-2, which details the "Responsibilities of *furnishers of information* to consumer reporting agencies." 15 U.S.C. § 1681s-2 (emphasis added). Section 1681s-2 "governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency." *Silber* v. *TransUnion, LLC*, No. 23 Civ. 7182 (NSR) (JCM), 2025 WL 588620, at *4 (S.D.N.Y. Feb. 24, 2025) (quoting *Ngambo* v. *Chase*, No. 20 Civ. 2224 (NSR), 2023 WL 1767463, at *3 (S.D.N.Y. Feb. 3, 2023)).

Section 1681s-2 only applies to "furnishers of information," not to CRAs like TransUnion. *See Lewis* v. *Experian Info. Sols., Inc.*, No. 23 Civ. 857 (AMD) (RML), 2024 WL 1308705, at *9 n.15 (E.D.N.Y. Mar. 27, 2024) ("The claim must also be dismissed against the Credit Reporting Agencies [(Experian, TransUnion, and Equifax)] because Section 1681s-2(b) applies only to furnishers."); *see also McDougald* v. *BMW Fin. Servs. NA, LLC*, No. 23 Civ. 2997

---

[11]    There appears to be no NYFCRA provision analogous to FCRA § 1681s-2.

(BRM) (JSA), 2024 WL 3934721, at *6 (D.N.J. Aug. 26, 2024) (granting

Defendants' motion for judgment on the pleadings because "Section 1681s-2 of

the FCRA applies to 'furnishers of information,' and not to consumer reporting

agencies like [Experian and TransUnion].").  Therefore, Plaintiff fails to state a

claim against TransUnion under 15 U.S.C. § 1681s-2.

### 7. Plaintiff Fails to State a Claim Under 15 U.S.C. § 1681s-3 of the FCRA[12]

Plaintiff alleges that TransUnion also violated 15 U.S.C. § 1681s-3, an

"affiliate sharing" provision that governs the use of information to "make a

solicitation for marketing purposes to a consumer about its products or

services."  15 U.S.C. § 1681s-3.  Plaintiff does not allege any facts suggesting

that TransUnion ever made any solicitation to him about its products or

services for marketing purposes.  *See, e.g.*, *Orr* v. *Kia Fin. Am.*, No. 23 Civ. 334

(JPB) (RGV), 2024 WL 4251705, at *9 n.13 (N.D. Ga. Aug. 27, 2024) (finding

that § 1681s-3 did not apply to plaintiff's claim that defendant unlawfully

disclosed information to CRAs without her consent), *report and*

*recommendation adopted*, No. 23 Civ. 334 (JPB), 2024 WL 5711017 (N.D. Ga.

Dec. 31, 2024).  Plaintiff has therefore not alleged "enough facts to state a

claim to relief that is plausible on its face" under § 1681s-3 of the FCRA.  *See*

*Twombly*, 550 U.S. at 570.

---

[12]    There appears to be no NYFCRA provision analogous to FCRA § 1681s-3.

### 8.    Plaintiff Fails to State a Claim Under 15 U.S.C. § 1681c-1(b)(1)(B) of the FCRA[13]

Finally, Plaintiff fails to state a claim under 15 U.S.C. § 1681c-1(b)(1)(B) of the FCRA.  Plaintiff alleges that TransUnion violated this provision by failing to remove his name, address, and Social Security number from prescreened offers of credit.  (SAC 13-14).  Section 1681c-1(b)(1)(B) provides that a CRA, once a consumer submits an identity theft report and provides "appropriate proof of … identity," must "exclude the consumer from any list of consumers prepared by the consumer reporting agency and provided to any third party to offer credit or insurance to the consumer as part of a transaction that was not initiated by the consumer" (*i.e.*, prescreened offers of credit).  15 U.S.C. § 1681c-1(b)(1)(B).

Plaintiff claims that "Defendants have been informed that Plaintiff is the victim of Identity Theft.  As such, a seven-year fraud alert was placed on the Plaintiff's credit report(s)."  (SAC 13).  However, while Plaintiff sought identity theft protection, Plaintiff does not sufficiently allege that he requested a fraud alert from TransUnion; that he provided the "appropriate proof of … identity"; and that TransUnion granted him a fraud alert.  Plaintiff did not even specify that TransUnion itself (as distinguished from the other named defendants) placed a seven-year fraud alert on his credit report.  (*Id.*).  *See supra* note 4.  Such conclusory allegations cannot support a § 1681c-1(b)(1)(B) claim.  Nonetheless, even assuming that TransUnion did place a fraud alert in

---

[13]    There appears to be no NYFCRA provision analogous to FCRA § 1681c-1(b)(1)(B).

Plaintiff's file, Plaintiff's claim fails at the next step, as Plaintiff did not plead any facts to suggest that he received a prescreened offer of credit from any affiliated third party. Accordingly, Plaintiff's allegations with respect to § 1681c-1(b)(1)(B) do not "contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## C.    The Court Grants Plaintiff Leave to Amend in Part

Plaintiff requests leave to amend his pleading should the Court grant any part of Defendant's motion, and, indeed, the Court has granted Defendant's motion in full. (Pl. Opp. 7). The Court grants Plaintiff leave to amend, but only in part. Federal Rule of Civil Procedure 15 provides that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Hickman* v. *City of New York*, No. 19 Civ. 5292 (KPF), 2021 WL 2473806, at *7 (S.D.N.Y. June 17, 2021). In particular, the Second Circuit has held that leave to replead should be liberally granted to *pro se* litigants. *See Grullon* v. *City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once[.]"); *see also Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). This permissive standard is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)); *see also Foman* v. *Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper

23

subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Of course, granting leave to amend is not required where it would be futile. *See Hill* v. *Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011).

Plaintiff's complaint does not suggest that he is in possession of facts that would cure the identified deficiencies in his claims under FCRA §§ 1681e(e)(2), 1681r, 1681s-2, or 1681s-3, or under NYFCRA § 380-p. *See Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice absent any indication plaintiff could or would provide additional allegations leading to different result); *Fischman* v. *Mitsubishi Chem. Holdings Am., Inc.*, No. 18 Civ. 8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). The defects in Plaintiff's complaint as to the claims under FCRA §§ 1681e(e)(2), 1681r, 1681s-2, and 1681s-3, and under NYFCRA § 380-p, cannot be cured by an amendment and any such amendment would undoubtedly be futile: Sections 1681r and 1681s-2 are inapplicable to TransUnion, and §§ 1681e(e)(2) and 1681s-3 fall outside the gravamen of Plaintiff's alleged injuries. Accordingly, the Court declines to grant Plaintiff leave to amend such claims, and they are dismissed with prejudice.

However, because of the liberality afforded to *pro se* litigants, the Court grants Plaintiff the opportunity to amend his complaint as to his claims under §§ 1681i, 1681e(b), and 1681c-1(b)(1)(B) of the FCRA, and their analogous provisions under the NYFCRA, because the Court finds that Plaintiff could

24

plausibly allege facts to support these claims.  Plaintiff is reminded that any amended complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  Plaintiff's amended complaint must specify, among other issues, what claims he is asserting against TransUnion specifically and the facts that substantiate those claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is GRANTED.  Plaintiff's claims under FCRA §§ 1681e(e)(2), 1681r, 1681s-2, and 1681s-3, and under NYFCRA § 380-p, are dismissed with prejudice.  Plaintiff's remaining claims under FCRA §§ 1681i, 1681e(b), and 1681c-1(b)(1)(B), and their NYFCRA analogues, are dismissed without prejudice, and Plaintiff is granted leave to amend those claims.  The Clerk of Court is directed to terminate the pending motion at docket entry 62.

On or before **August 29, 2025**, Plaintiff may file an amended complaint that complies with the standards outlined above.  If Plaintiff files such an amended complaint, the Court will set a briefing schedule for TransUnion's response.  If no amended complaint is filed by that date, the Court will direct that judgment be entered in favor of TransUnion and close the case.[14]

---

[14]    TransUnion seeks an award of fees and costs incurred in defending this action, including reasonable attorney's fees.  (Def. Br. 13).  The FCRA "provides for an award of fees associated with responding to an unsuccessful pleading or motion that was filed 'in bad faith or for purposes of harassment.'"  *Edge* v. *Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (quoting 15 U.S.C. § 1681n(c)), *aff'd*, 234 F.3d 1261 (2d Cir. 2000).  However, "[f]ees are not awarded simply because a party prevails in litigation."  *Id.*  TransUnion refers to Plaintiff as a "prolific and vexatious litigant" and alleges that he has filed numerous suits in federal courts under different identities.

SO ORDERED.

Dated:     July 22, 2025
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

(Def. Br. 1-4).  However, TransUnion does not allege, nor put forward sufficient evidence, that Plaintiff "commenced and continued this litigation in bad faith or for purposes of harassment."  *Burns* v. *Bank of Am.*, 655 F. Supp. 2d 240, 253 (S.D.N.Y. 2008) (quoting *Edge*, 64 F. Supp. 2d at 119), *aff'd*, 360 F. App'x 255 (2d Cir. 2010) (summary order).  Therefore, the Court declines to award attorney's fees to TransUnion.